UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SUSAN COOK,

                Plaintiff,

   - against -

PORT WASHINGTON WATER DISTRICT,
JONATHAN LABER, Individually and in his
official capacity, JOHN MAHONEY,
Individually and in his official capacity,
THOMAS MURRAY, Individually and in his
official capacity, ITALO VACCHIO,
Individually and in his official capacity, and
PETER MEYER, Individually and in his
official capacity,

                Defendants.
------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 23 2004 ★
LONG ISLAND OFFICE

**COMPLAINT**

Jury Trial Demanded

CV 04 3147

WEXLER, J.

LINDSAY, M.

Plaintiff, Susan Cook, by and through her attorneys, Leeds, Morelli & Brown, P.C., complaining of Defendants herein, alleges, upon knowledge as to herself and her own actions, and upon information and belief as to all other matters:

**JURISDICTION AND VENUE**

1.    This action is brought pursuant to 42 U.S.C. § 1983 to redress discrimination against Plaintiff in the terms, conditions and privileges of employment of Plaintiff by the municipal Defendant, as well as deprivation by the municipal Defendant, under the policies, ordinances, custom and usage of all rights, privileges and immunities secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States and all the laws and statutes

1

thereunder.

2. This action is also brought against the municipal defendant for its violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*; and the New York Executive Law, the Human Rights Law, § 290 *et seq.*

3. Claims are brought against defendants Jonathan Laber, John Mahoney, Thomas Murray, Italo Vacchio, and Peter Meyer pursuant to 42 U.S.C. § 1983 and Human Rights Law § 296(6).

4. The jurisdiction of this Court is invoked under 28 U.S.C. §1331, the doctrine of pendent jurisdiction, and the aforementioned statutory and constitutional provisions.

5. Venue is proper pursuant to 28 U.S.C. §1391.

6. The jurisdictional prerequisites to this lawsuit have been completed. Plaintiff filed a formal administrative complaint with the Equal Employment Opportunity Commission ("EEOC") and was issued a Right to Sue letter on May 24, 2004. A copy of the Right to Sue letter is attached herein as Exhibit "A."

## PARTIES

7.  At all relevant times, Plaintiff Susan Cook ("Cook") was and still is a resident of the State of New York, County of Nassau.

8.  At all relevant times, upon information and belief, Defendant Port Washington Water District ("District") was and still is a public water supplier and Agency of the State of New York with its principal place of business located at 38 Sandy Hollow Road, Port Washington, NY 11050.

9.  At all relevant times, Defendant Jonathan Laber ("Laber") was the Plant Maintenance Foreman and later became the Supervisor of Water Plant Operations for the District. As such, Laber was and still is an official responsible for the management and supervision of the District, including its maintenance and operation, as well as the discipline of employees, and all other employment related issues. Additionally, Laber is a policymaker charged with the responsibility of insuring that employees are not subjected to discrimination or harassment. He is also responsible for properly training and supervising employees at the District.

10. At all relevant times, Defendant John Mahoney ("Mahoney"), was the Director of Operations for the District. As such, Mahoney was and still is an official responsible for the management and supervision of the District, including its maintenance and operation, as well as the hiring, promotion and discipline of employees, and all other employment related

issues. Additionally, Mahoney is a policymaker charged with the responsibility of insuring that employees are not subjected to discrimination or harassment. He is also responsible for properly training and supervising employees at the District.

11. At all relevant times, Defendant Thomas Murray ("Murray") was and still the District Commissioner for the District. As such, Murray was and still is an official responsible for the management and supervision of the District, including its maintenance and operation, as well as the hiring, promotion and discipline of employees, and all other employment related issues. Additionally, Murray is a policymaker charged with the responsibility of insuring that employees are not subjected to discrimination or harassment. He is also responsible for properly training and supervising employees at the District.

12. At all relevant times, Defendant Italo Vacchio ("Vacchio") was and still is the District Superintendent. As such, Vacchio was and still is an official responsible for the management and supervision of the District, including its maintenance and operation, as well as the hiring, promotion and discipline of employees, and all other employment related issues. Additionally, Vacchio is a policymaker charged with the responsibility of insuring that employees are not subjected to discrimination or harassment. He is also responsible for properly training and supervising employees at the District.

13. At all relevant times, Defendant Peter Meyer ("Meyer") was and still is the District Commissioner. As such, Meyer was and still is an official responsible for the management

and supervision of the District, including its maintenance and operation, as well as the hiring, promotion and discipline of employees, and all other employment related issues. Additionally, Meyer is a policymaker charged with the responsibility of insuring that employees are not subjected to discrimination or harassment. He is also responsible for properly training and supervising employees at the District.

## FACTS

14. Plaintiff is female. She was hired by Defendant District on or around December 6, 1982 as a Clerk-Typist.

15. After completing a battery of training courses and passing several Civil Service tests, in January 1, 1998, Cook was promoted to Water Plant Manager.

16. As Water Plant Manager, Cook's direct supervisor was Laber, Plant Maintenance Foreman and, later, Supervisor of Water Plant Operations.

17. In October 1999, Laber professed his love for Cook and expressed his desire to be in a sexual relationship with her. Cook rejected Laber's sex-based advances.

18. Thereafter, Laber subjected Cook to discriminatory intimidation, ridicule, and insult. Laber's behavior permeated Cook's work environment - creating a severe and pervasive hostile work

environment for Cook based on her rejection of his advances. Laber's actions included, but were not limited to, the following:

    a.    On at least one (1) occasion, watching Cook arrive at work from a nearby wooded area.

    b.    On at least one (1) occasion, driving by Cook's home, which is on a dead end street, for the sole purpose of seeing whether Cook was home.

    c.    On at least one (1) occasion, parking his personal vehicle across a park near Cook's home.

    d.    Refusing to leave the home of Cook's neighbor until Cook agreed to see him.

    e.    Stating that Cook was "a puppet on a string."

    f.    Stating that Laber would "take her [Cook] down."

    g.    Other unwelcomed harassing actions.

19.    Though Cook attempted to continue working with Laber on a friendly basis, on December 2, 1999, when Cook realized that Laber's harassment and intimidation was only going to escalate, Cook told Laber that they could no longer be friends. Laber responded by threatening, "You are going to be very sorry."

20.    Cook immediately complained to Mahoney (District Supervisor) and Murray (District Commissioner) about Laber's harassing and discriminatory behavior.

21.    Thereafter, even though Cook was directed to report to Mahoney and Laber was transferred to another office location, the hostile work environment worsened. For instance:

6

a.  Cook's duties were drastically cut when she started reporting to Mahoney instead of Laber.

b.  Cook still saw Laber on a daily basis because Laber's office was in close proximity to Mahoney's office.

c.  Laber made derogatory statements about mouthed Cook to employees, supervisors, and even outside contractors. For instance, in April 2001, after speaking with Laber, an outside contractor warned Cook that Laber had it out for her and that she should "watch out."

22. After her December 2, 1999 complaint, the District ceased offering Cook overtime that she had been offered in the past but continued to offer overtime to similarly situated individuals who did not complain about discrimination.

23. For instance, though Cook was scheduled to work on Good Friday in April 2001, that year, Laber transferred this overtime opportunity to John Popeleski ("Popeleski"), Water Plant Operator, a lower ranked male coworker who did not complain about discrimination.

24. Throughout 2000 and 2001, Laber made demeaning statements about Cook to contractors and Cook's coworkers. Laber also took away Cook's supervisory duties. On several occasions, Cook complained to Mahoney about these issues. The District failed to resolve her concerns.

25. In or around February 2002, the District hired a new Superintendent - Vacchio. From Vacchio's hire to the present, Vacchio over scrutinizes Plaintiff as compared to her similarly

7

situated male coworkers. For instance:

    a. From February 2002 to present, Vacchio frequently checked to see where Cook was and what she was doing. Vacchio did not similarly scrutinize Cook's similarly situated male coworkers who did not complain about discrimination.

    b. In March 2002, Vacchio wrote up Cook for borrowing the District's chainsaw for personal use. However, upon information and belief, Vacchio did not write up her similarly situated male coworkers who also borrowed tools and equipment from the District.

    c. In April 2002, Vacchio threatened to terminate Cook if she made any mistakes in acquiring well samples. Vacchio did not threaten Cook's similarly situated coworkers.

26. Tellingly, in or around April 2002, when Cook asked Vacchio why he singled her out for no apparent reason, Vacchio stated words to the effect of "I've heard about your reputation." Cook believes that Vacchio was either referring to rumors that Cook had a problem with Laber and/or that he had been informed of Cook's complaints about Laber's harassment.

27. On September 11, 2002, Vacchio and Commissioner Meyer demoted Cook from Water Plant Manager to Water Plant Operator, a less prestigious, non-supervisory position with less vacation time, personal time, sick time, and without District paid life insurance benefits.

28. On March 10, 2003, Vacchio directed Cook to wash and wax her District vehicle. In doing so, Vacchio stated to Cook, "I will give you help because you're a girl and don't have the strength to do the job."

8

29.  In March, 2003, on two (2) separate occasions, Vacchio screamed and berated Cook to such an extent that Cook filed police reports.

30.  On May 26, 2003, Laber gave Cook $40.00 and instructed Cook to buy a card and flowers and bring them to the hospital to deliver to Mrs. Loomis, a local woman who had recently been injured. Cook did as Laber had instructed.

31.  Approximately one (1) week later, on June 4, 2003, Cook was formally notified of charges against her for having left District premises during work hours. Cook complained about the charges to Murray, explaining that Laber had instructed her to buy and deliver flowers to Mrs. Loomis and reminding Murray of Laber's history with Cook. Two (2) days later, in response to her complaint, a memo was circulated stating that employees were no longer allowed to contact Commissioners and were, instead, only allowed to contact their Supervisors and the Superintendent. Cook's complaints again went unheeded.

32.  On June 25, 2003, Cook requested to use her own car to attend a job-related class as she had an appointment immediately after work. Though Vacchio had allowed similarly situated male employees who did not complain about discrimination, such as Dave Joseph (Senior Water Servicer) and Tom Lannon (Water Servicer), use their personal cars to attend similar classes, Vacchio refused Cook's request for no reason.

33.  On July 15, 2003, Laber gave Cook permission to take a half day sick day for which she

should have been paid. Thereafter, Laber denied giving her the time off and docked her pay for that day.

34. On July 17, 2003, during a daily morning assignment meeting where retirement was discussed, Cook stated that she had 17 years until retirement. In front of her coworkers, Vacchio stated to Cook, "You're not going to be here that long."

35. On July 18, 2003, in a meeting regarding the charges against Cook for the Loomis incident, Cook was informed that the District had chosen John Sweeney to be the hearing officer for her hearing. Cook requested that a different hearing officer be appointed for her hearing but her request was denied.

36. On August 28, 2003, even though she had done nothing wrong, Cook accepted a suspension upon the Union's recommendation for fear that Sweeney, who, upon information and belief, had a personal relationship with Vacchio, would terminate her if she proceeded with her hearing.

37. After Cook's December 2, 1999 complaint, the District reduced Cook's training and classes such that she was unable to meet the required amount of training and classes necessary to maintain her State Water Plant Operating License. Meanwhile, the District continued to offer said training and classes to Cook's similarly situated male counterparts who did not complain about discrimination, such as Joe Barbarito (a Water Plant Operator) and Joe Giunta (a Water

Servicer). The District even offered training and classes to Richard Zimbardi, a Water Servicer who did not need the classes as he did not have a State License to maintain. Cook had complained on several occasions to Vacchio but her complaints went unresolved.

38. In August 2003, when Cook informed Vacchio that she had renewed her license by persuading the State to accept her college credits in lieu of the required contact hours, upon information and belief, Vacchio stated to Laber, "How did she get that, she did not have enough contact hours," implying that he had purposely tried to force Cook to allow her license to expire.

39. During the week of September 15, 2003, Popeleski again received an overtime opportunity that Cook should have received.

40. On or around October 15, 2003, even though Cook was contacted by an alarm company and was available to respond to the call, Vacchio refused to allow Cook to perform her job duties.

41. On or around October 16, 2003, in a conversation with Laber, Popeleski referred to Cook as Vacchio's "sweetie pie."

42. During the week of November 18, 2003, on at least two (2) occasions, Laber incorrectly wrote up Cook and submitted the write-ups to Vacchio.

43. On or around April 13, 2004, Vacchio incorrectly recorded that Cook left work over ½ hour earlier than Cook had actually left.

44. The actions set forth above were undertaken against Cook without just cause and were not taken against similarly situated male employees, constituting sex/gender discrimination. Also, the above actions were taken against Cook in retaliation for complaining about the discrimination and/or for rejecting the sexual advances of her supervisor.

## CAUSES OF ACTION AGAINST THE PORT WASHINGTON WATER DISTRICT

45. Plaintiff repeats, reiterates, and realleges each and every allegation as if they were fully set forth herein.

46. By reason of the aforementioned actions, practices and customs of Defendant District herein, the District has intentionally abridged and violated Plaintiff's federally protected constitutional rights secured by the First and Fourteenth Amendments to the Constitution of the United States, as well as 42 U.S.C. § 1983 including, but not limited to, her right to Equal Protection under the law.

47. Municipal officials intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of plaintiff's constitutional rights. Such deliberate indifference may be inferred in the following ways:

a. Defendants had a custom or practice of harassing the plaintiff based on her gender and/or in retaliation for complaining about same. The discriminatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

b. Supervisors failed to properly investigate and address allegations of discrimination, retaliation and/or harassment.

c. Inadequate training/supervision was so likely to result in the discrimination, retaliation, and/or harassment that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

d. Policymakers engaged in and/or tacitly condoned the discrimination/retaliation.

48. The aforementioned acts were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*; and the New York State Executive Law, Human Rights Law, § 290 *et seq.*

## CAUSES OF ACTION AGAINST THE INDIVIDUAL DEFENDANTS

49. Plaintiff repeats, reiterates, and realleges each and every allegation as if they were fully set forth herein.

50. Defendants Laber, Mahoney, Murray, Vacchio, and/or Meyer unlawfully participated in and permitted the aforementioned harassment and discrimination to perpetuate, without abatement, in violation of Plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. § 1983.

51. As more fully set forth above, the individual defendants aided, abeted, incited, compelled and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law, § 296(6).

WHEREFORE, Plaintiff demands judgment against Defendants for, where applicable, all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other damages permitted by law. Punitive damages are sought only against the individual Defendants. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Carle Place, New York
July 20, 2004

Respectfully Submitted,

LEEDS, MORELLI & BROWN, P.C.
Attorneys For Plaintiff
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

BECKY TONG
(BT-5206)

Case 2:04-cv-03147-LDW   Document 1   Filed 07/23/04   Page 15 of 15 PageID #: 15

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Susan Cook<br>13 Jefferson Street<br>Port Washington, NY 11050 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2004-00169 | Rance A. O'Quinn,<br>Enforcement Supervisor | (617) 565-3192 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Robert L. Sanders,
Area Director

MAY 24 2004
(Date Mailed)

Enclosure(s)

cc: **The Port Washington Water District**
c/o Anthony Merline, Esq.
Bee, Ready, Fishbein, Hatter & Donovan, LLP
170 Old County Road, Suite 200
Mineola, NY 11501

**Susan Cook**
c/o Becky Tung, Esq.
Leeds, Morelli & Brown, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514