UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SUSAN COOK,

        Plaintiff,

-against-

PORT WASHINGTON WATER DISTRICT,
JONATHAN LABER, Individually and in his
official capacity, JOHN MAHONEY,
Individually and in his official capacity,
THOMAS MURRAY, Individually and in his
official capacity, ITALO VACCHIO,
Individually and in his official capacity, and
PETER MEYER, Individually and in his
official capacity,

        Defendants.
-----------------------------------------------------------X

Docket No. 04 CV 3147

# PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO
### BOTH OF DEFENDANTS' MOTIONS TO DISMISS

LEEDS MORELLI & BROWN, P.C.
*Attorney For Plaintiff*
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SUSAN COOK,

               Plaintiff,

  -against-

PORT WASHINGTON WATER DISTRICT,
JONATHAN LABER, Individually and in his
official capacity, JOHN MAHONEY,
Individually and in his official capacity,
THOMAS MURRAY, Individually and in his
official capacity, ITALO VACCHIO,
Individually and in his official capacity, and
PETER MEYER, Individually and in his
official capacity,

               Defendants.
----------------------------------------------------------X

Docket No. 04 CV 3147



# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO
# BOTH OF DEFENDANTS' MOTIONS TO DISMISS

LEEDS MORELLI & BROWN, P.C.
*Attorney For Plaintiff*
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

ARGUMENT .................................................................................................................. 2

I.     STANDARD ON A MOTION TO DISMISS ..................................................... 2

II.    PLAINTIFF'S TITLE VII, HRL, AND § 1983 CLAIMS ARE TIMELY .......... 4

      A.    Plaintiff's claims are based on events that occurred within
the statutory time period........................................................................ 4

      B.    Events occurring outside of the statutory time period are
actionable pursuant to the continuing violations theory.......................... 9

III.   PLAINTIFF §1983 CLAIM IS BASED ON DEFENDANTS' VIOLATION
OF HER EQUAL PROTECTION RIGHTS PURSUANT TO
THE FOURTEENTH AMENDMENT .............................................................. 12

IV.   PLAINTIFF'S QUID PRO QUO SEXUAL HARASSMENT CLAIM
UNDER §1983 ................................................................................................... 13

CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

Conley v. Gibson, 355 U.S. 41, 45-56, 78 S.Ct. 99, 102 (1957) ...................... 2, 3

Gant v. Wallingford Bd. Of Educ.,
69 F.3d 669, 673 (2d Cir. 1995), appeal after remand, 195 F. 3d 134 (1999) .. 2

Hernandez v. Coughlin,
18 F.3d 133, 136 (2d Cir.) cert. denied, 115 S.Ct. 117 (1994) ........................ 2

Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991) ......................................... 2

Greenberg v. New York State,
919 F. Supp. 637, 640 (quoting Conley, 355 U.S. at 45-46) ............................ 3

Swirekiewicz v. Soreman N.A., 122 S. Ct. 992 (2002) ..................................... 3, 9

McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973) ............................. 3

Greenier v. Pace, Local No. 1188, 2002 WL 731714, *2 (D. Me. 2002) ........ 4

Bennet v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) ...................................... 4

Everson v. New York City Transit Authority,
216 F.Supp.2d 71, 78 (E.D.N.Y. 2002) ............................................................ 4

Cruz v. Coach, 202 F.3d 560, 572 (2d Cir. 2000) ............................................. 8

Wanamaker v. Columbian Rope Company,
108 F.3d 462, 467 (2d Cir. 1997) ..................................................................... 8

National Railroad Passenger Corporation v. Morgan,
122 S.Ct. 2061, 2068 (2002) ............................................................................. 9, 10

Cornwell v. Robinson, 23 F.3d 694 (2d Cir. 1994) ........................................... 10, 11, 12

Gierlinger vs. New York State Police, et al.,
15 F.3d 32, 34 (2d Cir. 1994) ........................................................................... 12, 13

Saulpaugh v. Monroe County Hosp., 4 F.3d 134, 143 (2d Cir. 1993) ............. 12

**Cases**  **Page(s)**

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 753-54 (1998) ............. 13

Karibian v. Columbia University, 14 F.3d 773, 777 (2d Cir. 1994) ............. 14

## PRELIMINARY STATEMENT

Plaintiff, Susan Cook ("Cook"), commenced this action in July 2004, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), the New York Executive Law, Human Rights Law §290 et seq ("HRL"), and 42 U.S.C. §1983 ("§1983"). Specifically, Plaintiff was discriminated against on the basis of her sex/gender and/or in retaliation for her opposition to discriminatory practices in that she was subjected to (a) *quid pro quo* sexual harassment; (b) a hostile work environment; and (c) other adverse employment actions.

In January 2005, Defendants Port Washington Water District ("the District"), John Mahoney, Thomas Murray, Italo Vacchio, and Peter Meyer moved to dismiss allegedly because: (1) Plaintiff's sexual harassment and retaliation claims are untimely; (2) Plaintiff failed to state a separate and distinct cognizable claim for her §1983 claim; and (3) Plaintiff's gender discrimination claims are based on untimely discriminatory acts. Defendant Jonathan Laber ("Laber") filed a separate motion to dismiss arguing the following: (1) Plaintiff's HRL and §1983 claims are untimely; (2) Plaintiff failed to state a separate and distinct cognizable claim for her §1983 claim; and (3) there is no cognizable claim under §1983 for retaliation.

Plaintiff submits this Memorandum of Law in opposition to both motions to dismiss. As demonstrated below, Defendants' claims are without merit as: (1) Plaintiff's Title VII, HRL, and §1983 are timely; (2) Plaintiff's §1983 claim is based on Defendants' violation of her equal protection rights pursuant to the Fourteenth Amendment; and (3) Plaintiff's retaliation claim is limited to, and asserted only in connection with, her Title VII and HRL claims such that, for

purposes of §1983, Plaintiff asserts a *quid pro quo* sexual harassment claim, not a retaliation claim.

## STATEMENT OF FACTS

As the relevant facts are discussed in the Complaint[1] and throughout the body of this Memorandum, the Court is respectfully referred to these documents for a full recitation of the facts.

## ARGUMENT

I.  STANDARD ON A MOTION TO DISMISS

It is well established that when a motion is made to dismiss for failure to state a claim upon which relief can be granted, the court will accept all facts alleged in the Complaint as true, and construe all reasonable inferences in the plaintiff's favor. Conley v. Gibson, 355 U.S. 41, 45-56, 78 S.Ct. 99, 102 (1957); See Gant v. Wallingford Bd. Of Educ., 69 F.3d 669, 673 (2d Cir. 1995), appeal after remand, 195 F. 3d 134 (1999); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.) cert. denied, 115 S.Ct. 117 (1994). The court should not dismiss any cause of action "unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," and it will apply this principle particularly strictly to plaintiff's civil rights causes of action. Conley, 355 U.S. at 45-46 (emphasis added); Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). In accordance with the liberal notice pleading rules articulated in the

---

[1] A copy of the Complaint was provided by both defense counsels' declarations as Exhibit A.

2

Federal Rules (Fed. R. Civ. P. 8(a), in order to survive a motion to dismiss, the plaintiff need only show that he has given the defendant, "fair notice of what [his or her] claim is and the grounds upon which it rests." Greenberg v. New York State, 919 F. Supp. 637, 640 (quoting Conley, 355 U.S. at 45-46).

The United States Supreme Court has recently rejected the judicially-created notion that discrimination complaints must allege facts constituting a *prima facie* case of discrimination under the McDonnell Douglas framework. See Swirekiewicz v. Soreman N.A., 122 S. Ct. 992 (2002); see also McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973)(setting forth the burden shifting scheme originally utilized in employment discrimination/retaliation cases). In explicitly overruling a substantial body of case law, the Supreme Court in Swierekiewicz held that in order to make a proper pleading of discrimination, and survive a motion to dismiss, all a plaintiff must do is plead facts which provide the defendant with "fair notice of what plaintiff's claim is, and the grounds on which it rests." Swirekiewicz, 122 S. Ct. at 992. The Supreme Court specifically held:

> Under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case . . . [m]oreover, the precise requirements of a *prima facie* case can vary depending on the context and were never intended to be rigid, mechanized or ritualistic. . . . Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case . . .[g]iven that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases. . . . [all that is required is that plaintiff] give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Id.

Therefore, when reviewing a complaint on a motion to dismiss, the "Court must review the Complaint guided not by the narrow question of whether it contains facts which, if true, could

3

satisfy *every element* of an employment discrimination claim, but rather by the broader question of whether the Complaint contains enough information to put Defendant on notice of the nature of Plaintiff's claims." Greenier v. Pace, Local No. 1188, 2002 WL 731714, *2 (D. Me. 2002). Indeed, the pleading requirements in a discrimination case are so minimal that a claim has been held to survive a motion to dismiss where the only allegation was "I was turned down for the job because of my race." See Bennet v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). In short, the complaint must merely provide notice to defendants of the claims alleged.

As set forth below, Plaintiff's claims should not be dismissed as Plaintiff has established through her Complaint a set of facts upon which she would be entitled to relief.

II. PLAINTIFF'S TITLE VII, HRL, AND § 1983 CLAIMS ARE TIMELY

### A. Plaintiff's claims are based on events that occurred within the statutory time period.

The Complaint in this matter was filed on July 23, 2004. The statute of limitations under § 1983 and HRL is three (3) years. Everson v. New York City Transit Authority, 216 F.Supp.2d 71, 78 (E.D.N.Y. 2002). Thus, any discriminatory and/or retaliatory acts that occurred after July 23, 2001 are within the HRL's and § 1983's statutes of limitations.

The statute of limitations under Title VII is 300 days calculated from the date the complainant files her EEOC charge. 42 U.S.C. 2000e-5(e)(1). Since Plaintiff filed her EEOC charge on October 17, 2003, any actions Defendants subjected Plaintiff to after December 20, 2002 are within Title VII's statute of limitations.

The Complaint describes specific instances of discrimination that Defendants engaged in that are within the statutory time period. For instance:

    a.    Throughout 2001, Laber continued to make demeaning statements about Cook to contractors and Cook's coworkers. (Compl. ¶ 24). The District failed to resolve Cook's complaints with respect to Laber's statements. Id.

    b.    Throughout 2001, Laber took away Cook's supervisory duties. (Compl. ¶ 24). Though Cook complained to the District, it failed to resolve same. (Id.).

    c.    From February 2002 to present, Italo Vacchio ("Vacchio")(Superintendent), frequently checked to see where Cook was and what she was doing - which he did not do to her similarly situated male coworkers who did not complain about discrimination. (Compl. ¶ 25a).

    d.    In March 2002, Vacchio wrote up Cook for borrowing District equipment for personal use - which he did not do to her similarly situated male coworkers who did not complain about discrimination. (Compl. ¶ 25b).

    e.    In April 2002, Vacchio threatened to terminate Cook if she made mistakes. (Compl. ¶ 25c).

    f.    On September 11, 2002, Cook was demoted to a less prestigious position with

less vacation time, personal time, sick time, and without District paid life insurance benefits. (Compl. ¶ 27).

g. On March 10, 2003, Vacchio directed Cook to wash her District vehicle, stating, "I will give you help because you're a girl and don't have the strength to do the job." (Compl. ¶ 28).

h. In March 2003, on two (2) occasions, Vacchio screamed and berated Cook to such an extent that Cook filed police reports. (Compl. ¶ 29).

i. On May 26, 2003, Cook, at Laber's direction, bought gifts and delivered them to a local, injured woman. (Compl. ¶ 30). Approximately one (1) week later, the District brought charges against Plaintiff for leaving District premises during work hours. (Compl. ¶ 31). Defendant denied Plaintiff's July 18, 2003 request to change the hearing officer assigned to her as she believed he was biased. (Compl. ¶ 35). Even though Plaintiff explained to the District that Laber had instructed her to leave District premises to purchase and deliver gifts to the injured local woman, on August 28, 2003, facing imminent termination, Plaintiff was forced to accept a suspension for this incident. (Compl. ¶¶ 31, 36).

j. On June 25, 2003, Cook's request to use her own car to attend a job-related class was denied. Cook's similarly situated male counterparts who did not complain

           about discrimination were allowed to use their personal cars to attend similar classes. (Compl. ¶ 32).

k.      On July 15, 2003, Laber gave Plaintiff permission to take a half day off and be paid for same. (Compl. ¶ 33). Thereafter, Laber denied granting Plaintiff this time off and docked her pay for that day. (Id.).

l.      On July 17, 2003, during a meeting where Cook stated she had 17 years until retirement, Vacchio stated to Cook, "You're not going to be here that long." (Compl. ¶ 34).

m.     From December 2, 1999 to present, the District reduced Cook's training and classes such that she was unable to meet the required amount of training and classes necessary to maintain her State Water Plant Operating License. The District continued to offer this training and classes to Cook's similarly situated male counterparts who did not complain about discrimination - including those who did not need the training o the classes. (Compl. ¶ 37).

n.      In September 15, 2003, the District denied Plaintiff an overtime opportunity which was given to a similarly situated male counterpart who did not complain about discrimination. (Compl. ¶ 39).

7

    o.    On or around October 15, 2003, even though Cook was contacted by an alarm company and was available to respond to the call, Vacchio refused to allow Cook to perform her job duties. (Compl. ¶ 40).

    p.    On or around October 16, 2003, in a conversation with Laber, Popeleski referred to Cook as Vacchio's "sweetie pie." (Compl. ¶ 41).

    q.    During the week of November 18, 2003, on at least two (2) occasions, Laber incorrectly wrote up Cook and submitted the write-ups to Vacchio. (Compl. ¶ 42).

    r.    On or around April 13, 2004, Vacchio incorrectly recorded that Cook left work over ½ hour earlier than Cook had actually left. (Compl. ¶ 43).

The foregoing actions all took place within the statutory time period.[2] The actions described in paragraphs b, f, i, k, m, and n, supra, are timely claims of specific adverse employment actions. Moreover, the aforementioned actions in paragraphs a-r, when taken cumulatively, amount to a hostile work environment (Cruz v. Coach, 202 F.3d 560, 572 (2d Cir. 2000) (finding that, in order to evaluate any hostile work environment claim, it is critical to consider the totality of circumstances, which includes all of the facts alleged, so as to obtain a

---

[2] All of the incidents described took place within the statutory time period for Plaintiff's 1983 and HRL claims. The incidents described in paragraphs g-r took place within the Title VII statutory time period.

realistic view of the work environment)) and/or contribute to an "atmosphere of adverse employment action" (Wanamaker v. Columbian Rope Company, 108 F.3d 462, 467 (2d Cir. 1997)(finding that different actions that standing alone may not be "adverse employment actions," may together "contribute to an atmosphere of adverse employment action.").

With respect to Plaintiff's hostile work environment claims and adverse employment action claims, the foregoing actions are enough to allege the basis of a severe or pervasive hostile work environment. Swirekiewicz v. Soreman N.A., 122 S. Ct. 992. However, pursuant to the continuing violation theory, the Court must also consider events outside of the statutory time period in order to assess liability with respect to the entire scope of the hostile work environment. National Railroad Passenger Corporation v. Morgan, 122 S.Ct. 2061, 2068 (2002). Said events are discussed below.

### B.     Events occurring outside of the statutory time period are actionable pursuant to the continuing violations theory.

In addition to the events listed in Section I.A.(a-r) supra, Plaintiff was also subjected to discriminatory/retaliatory actions that took place outside of the statutory time period. These events are used as background evidence and as part of Plaintiff's hostile work environment claim. The seminal Supreme Court case regarding statute of limitations in employment discrimination cases is National Railroad, 122 S.Ct. 2061. In National Railroad, the Court clearly held that acts outside the limitations can be used as evidence to support timely claims. National Railroad, 122 S.Ct. at 2072 (holding that the statute of limitations does not "bar an employee from using the prior acts as background evidence in support of a timely claim."). More

importantly, the Supreme Court held that a continuing violation theory exists in hostile work environment claims. National Railroad, 122 S.Ct. at 2075, 2077. Indeed, the Court clearly stated that, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile work environment takes place within the statutory period." National Railroad, 122 S.Ct. at 2068.

Thus, where a continuing violation can be shown, a claimant is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period. Cornwell v. Robinson, 23 F.3d 694 (2d Cir. 1994). Indeed, when a plaintiff experiences a continuous practice and policy of discrimination, the limitations period is delayed until the last discriminatory act in furtherance of it. Id. In Cornwell the Court held that a continuing violation occurs when: (1) where there is proof of specific ongoing discriminatory policies or practices, or (2) where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice. Id.

As described in the Complaint, the hostile work environment to which Cook was subjected started in October 1999, when her supervisor, Jonathan Laber ("Laber"), professed his love for her and she rejected his advances. (Compl. ¶ 17). Thereafter, based on her rejection of his advances, Laber created a severe and pervasive hostile work environment for Cook by stalking her at work and at home (Compl. ¶¶ 18a-c), refusing to leave her neighbor's home until she agreed to see him (Compl. ¶ 18d), and making various comments to Cook that inferred that Laber would use his position as Cook's supervisor to control the terms and conditions of Cook's

10

employment (Compl. ¶¶ 18e-f). In December 1999, when Cook told Laber that they could no longer be friends, he stated "you are going to be very sorry." (Compl. ¶ 19). Thereafter, Cook complained to John Mahoney ("Mahoney")(District Supervisor) and Thomas Murray ("Murray")(District Commissioner) about Laber's harassing and discriminatory behavior. (Compl. ¶ 20).

Instead of alleviating Cook's concerns, not only did the District allow the hostile work environment Laber created to continue, but the District and its high level supervisors actively engaged in the discrimination and/or retaliation themselves. For instance, the District stopped offering Cook overtime (Compl. ¶ 22), it cut Cook's duties drastically (Compl. ¶ 21a), and allowed Laber to continue making derogatory comments about Cook to her supervisors, coworkers, and outside contractors (Compl. ¶ 21c). Moreover, rather than change Laber's office location, the District changed Cook's office location. (Compl. ¶ 21b). As a result, Cook still saw Laber on a daily basis as Laber's office was in close proximity to Mahoney's office. Id.

Though these events occurred prior to July 23, 2001 (the date from which Plaintiff's HRL and § 1983 statutes of limitations should be calculated)[3], they evidence Defendants' ongoing policy of allowing Laber and the District's high-level supervisors to subject Plaintiff to a hostile work environment based on her gender and/or in retaliation for her complaints of discrimination. Cornwell, 23 F.3d at 694. These are specific and related instances of discrimination which Defendants allowed to continue unremedied from 1999 to the present such that it amounts to a discriminatory policy or practice. (Id.). Moreover, several events that occurred within the

---

[3] As previously stated, events that occurred after December 20, 2002 are within Title VII's statute of limitations.

11

statutory time period are proof of Defendants' specific ongoing discriminatory policies or practices. (Id.). See Section II.A., supra. Thus, these events are actionable pursuant to the continuing violations theory. Cornwell, 23 F.3d at 694. Even if these events are not actionable, they are admissible to establish liability for acts which occurred within the limitations period.

Based on the foregoing, Plaintiff's Title VII, § 1983, and HRL claims are timely.

III. PLAINTIFF §1983 CLAIM IS BASED ON DEFENDANTS' VIOLATION OF HER EQUAL PROTECTION RIGHTS PURSUANT TO THE FOURTEENTH AMENDMENT

"A Title VII plaintiff is not precluded from bringing a concurrent §1983 cause of action, so long as the §1983 claims is based on a distinct violation of a constitutional right. [Citation omitted]. For example, in some circumstances a §1983 claim may be properly grounded on a violation of the Equal Protection Clause of the Fourteenth Amendment based on sexual harassment in the workplace." Gierlinger vs. New York State Police, et al., 15 F.3d 32, 34 (2d Cir. 1994). A plaintiff can assert a claim under §1983 if some law other than Title VII is the source of the right alleged to have been denied. Saulpaugh v. Monroe County Hosp., 4 F.3d 134, 143 (2d Cir. 1993). "Sexual harassment of female employees by a state employer constitutes sex discrimination for purposes of the equal protection clause of the fourteenth amendment." Gierlinger, 15 F.3d at 34.

Plaintiff's §1983 claims are based on Defendants' violation of Plaintiff's equal protection rights under the fourteenth amendment - not Defendants' violation of Title VII. Saulpaugh, 4 F.3d at 143. Specifically, Plaintiff's §1983 claim is based on the sexual harassment to which her

12

state employer (the Defendants) subjected her. (Compl. ¶¶ 17-43) See Gierlinger, 15 F.3d at 34.

Based on the foregoing, Plaintiff has alleged a separate and distinct cognizable claim under §1983.

IV.  PLAINTIFF'S QUID PRO QUO SEXUAL HARASSMENT CLAIM UNDER §1983

Defendants have described Plaintiff's §1983 claims as "retaliation" claims. However, Plaintiff's §1983 action is not premised on "retaliation" claims in the sense of an employee being retaliated against for her "opposition to discriminatory practices." Rather, Plaintiff claims that she was retaliated against for failing to succumb to the sexual advances of her supervisor. Thus, Plaintiff's §1983 claim is based on a *quid pro quo* sexual harassment theory.[4]

A *quid pro quo* sexual harassment claim is characterized by a loss of tangible benefits to an employee who rejects her employer's sexual demands. According to the EEOC guidelines, *quid pro quo* harassment occurs when sexual conduct is made either explicitly or implicitly a term or condition of employment, or when "rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual." 28 C.F.R. § 11604.11(a)(2). The Supreme Court has embraced that definition. In Burlington Industries, Inc. v. Ellerth, the Court held that, "[w]hen a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." Ellerth, 524 U.S. 742, 753-54 (1998). Moreover, "the law imposes strict liability on

---

[4] Plaintiff's retaliation claim is limited to, and asserted only in connection with, her Title VII and HRL claims. For purposes of §1983, Plaintiff asserts a *quid pro quo* sexual harassment claim, not a retaliation claim.

13

the employer for *quid pro quo* harassment". <u>Karibian v. Columbia University</u>, 14 F.3d 773, 777 (2d Cir. 1994)(citing <u>Kotcher v. Sullivan Appliance Center, Inc.</u>, 957 F.2d 59, 62 (2d Cir. 1992)).

Here, Plaintiff's §1983 claims are based upon Cook's rejection of her supervisor's sexual advances (Compl. ¶ 17) and Defendants' use of this rejection as the basis for tangible employment actions affecting Cook (Compl. ¶¶ 18-43).

Thus, Defendants' arguments pertaining to Plaintiff's §1983 retaliation claims are moot.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motions to dismiss in their entirety.

Dated: Carle Place, New York
January 31, 2005

                                       Respectfully Submitted,
                                       LEEDS MORELLI & BROWN, P.C.
                                       Attorneys for Plaintiff
                                       One Old Country Road, Suite 347
                                       Carle Place, New York 11514
                                       (516) 873-9550

                                       _____
                                       Becky Tung (BT-5206)
                                       Rick Ostrove (RO-7248)